UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| BILLY CAUDILL, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| v. | ) | No. 6:24-CV-139-REW |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) | OPINION & ORDER |
| | ) | |
|    Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Billy Caudill appeals the adjudicated onset date relative to his claim for SSI/DIB benefits. *See* DE 1. After a prior reconsideration ruling and hearing request, an Administrative Law Judge ("ALJ") held a hearing in February 2023. The resulting decision from ALJ Kleber awarded benefits but moved the onset date from that initially claimed (July 23, 2020) to the date on which Caudill turned 55 (December 25, 2021). The decision became final when the Appeals Council denied review; this appeal ensued.

Caudill filed an initial brief, *see* DE 8, and the Commissioner responded in opposition. *See* DE 10. The administrative record appears at DE 7 ("R." Administrative Transcript) as part of the Commissioner's answer. After reviewing the record, with particular emphasis on the limited portions Caudill challenges and the structural limitations of his argument, the Court finds the ALJ's determination supported by substantial evidence and compliant with Agency rules and regulations. Accordingly, the Court **DENIES** Caudill's appeal and **AFFIRMS** the ALJ's underlying decision.

**I.       Relevant Background**

Caudill applied for benefits on March 5, 2021, alleging disability beginning on July 23, 2020. *See* R. at 50. He alleged a number of disabling conditions, including numbness in his right

hand, lower back pain, radiculopathy, shoulder surgery, a heart attack, and depression and anxiety. *See* R. at 122.

Despite being initially denied, Caudill eventually received benefits. However, the award letter explained that the Agency found Caudill disabled as of December 2021 (when he turned 55), several months later than he alleged. *See* R. at. 182–84.  Caudill appealed the onset date decision, and the Agency denied his claim both initially and on reconsideration, leading to an administrative hearing before ALJ Kendra Kleber. *See* R. at 189, 212. Judge Kleber, in a 16-page opinion, concluded that prior to December 25, 2021, Caudill did not meet the criteria of "disabled" within the definition of SSI/DIB. *See* R. at 47–63. The Appeals Council denied review, and Caudill turned to federal court.

Judge Kleber's opinion followed the standard five-step evaluation sequence laid out in 20 C.F.R. § 404.1520(a)[1]. *See id.* First, Judge Kleber concluded Caudill had not participated in gainful activity since July 23, 2020. *See* R. at 53. Second, the ALJ determined Caudill has had, as severe impairments, obesity, degenerative disc disease, and a left shoulder rotator cuff tear with repair and residual effects. *See id.* However, despite these impairments, Judge Kleber concluded at step three that Caudill "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *See* R. at 56. At step four, Judge Kleber determined Caudill's Residual Functional Capacity ("RFC"). *See* R. at 57. She found, based on Caudill's impairments and review of the full record, that he could perform a range of "light work" with frequent stooping, kneeling, and other physical adjustments—e.g., with the exceptions of no lifting overhead with the left upper extremity, no more than occasional use of vibratory tools with the left hand, and no more than occasional exposure to unprotected heights or uncovered

---

[1] The Court will employ the regulations in Part 404, which are substantively identical to the SSI regs in Part 416.

industrial machinery. *See* R. at 57–58. She then concluded that although Caudill could not perform past relevant work, still, prior to Caudill turning 55, "there were jobs that existed in significant numbers in the national economy that he could have performed." *See* R. at 64. Judge Kleber cited jobs like cashier, marker, and routing clerk, which the vocational expert testified as cumulatively creating at least 620,000 jobs in the national economy. *See id.*

Based on the full record and testimony from the vocational expert, Judge Kleber determined that Caudill did not qualify as "disabled" under the Medical-Vocational Guidelines prior to his 55th birthday. *See* R. at 65. She did, however, given the effects of age, adjust his onset date to one day before his 55th birthday, because under Social Security Law "an individual attains a given age on the day preceding the anniversary of his birthday." *See* R. at 250. On that day, Caudill entered the "advanced age category," meaning that since he could not perform past relevant work and could only perform a range of light other work, he then qualified as disabled and was entitled to benefits. *See* R. at 63–64. Kleber explained in her opinion that she conducts a two-step process for each impairment reported. *See* R. at 58. She first determines the impairment and then considers the intensity, persistence, and limiting effects of each individual impairment. *See id.* She concluded that while Caudill may have had impairments reasonably expected to cause symptoms, his statements concerning intensity, persistence, and limiting effects were not fully supported. *See id.*

Caudill, in offering really a one-page argument, sees two purported errors in the ALJ's analysis: (1) that the Agency assigned him an arbitrary onset date, (2) and that when considering the time before the reset date, Judge Kleber did not properly consider his obesity in the RFC. *See* DE 8 at 4. In particular, Caudill argues that Judge Kleber did not adequately consider obesity when evaluating his physical therapy results and expectations. Caudill unsuccessfully sought review of

3

Judge Kleber's opinion from the Appeals Council and now pursues judicial review under 42 U.S.C. § 405(g).

## II. Standard of Review

Judicial review of an ALJ's disability determination is a deferential inquiry, determined by the questions of whether substantial evidence supports the decision and whether the ALJ properly applied the legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Substantial evidence signals this deference. A determination satisfies the standard when it is supported by "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. In applying the standard, the Court does not "review the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Further, if substantial evidence could support either a favorable or unfavorable determination, reversal is unwarranted. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). The Court does not reach a de novo view; absent an error of law, the Court must uphold the Commissioner's decision even if it might have ruled differently as an initial matter, so long as substantial evidence girds the Agency's conclusions. *Id.* at 714.

When making its determination, the ALJ must diligently heed proper agency rules and regulations. An ALJ's failure to correctly apply and follow applicable law "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

The Social Security Act requires the ALJ to follow an extensive five-step inquiry in determining a person's disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4). The fight here centers on the RFC and the determinative effect

4

of Caudill moving from one age category to the next. Caudill includes no particular arguments regarding the ALJ's march through the requisite steps.

The Medical-Vocational Guidelines are a series of tables and columns used as part of the fifth step of the sequential analysis. *See Huigens v. SSA*, 718 F. App'x 841, 845 (11th Cir. 2017). Each column has a variable: age, education, and work experience. *See id.* at 845. The ALJ reviews the record based on the plaintiff's characteristics and then "plug[s]" those variables into the appropriate columns. *See Smith v. Colvin*, No. 1:12-CV-2042, 2013 U.S. Dist. LEXIS 80440, at *3 (N.D. Ohio June 7, 2013). The ALJ discussed application of the Grids, noted the analysis required depending on the limitations adjudicated, and properly marshalled the standards. Again, Caudill does not critique the ALJ's view of or particular application of the Grids.

### III.  Analysis

Caudill naturally does not dispute any of the five parts of analysis for the benefits he received after the adjudicated onset date but instead challenges the ALJ's different view of the record *prior* to him reaching the advanced age category. Specifically, he argues the determined onset date is arbitrary, and he challenges, if cursorily, the RFC for the disability analysis prior to December 2021. In the Court's view, Caudill misguidedly contends that the ALJ did not explain the relevance of the later date and that the ALJ failed to account for obesity in the disability calculus.

#### a. Onset Date

Caudill's adjudicated onset date is not arbitrary. The ALJ specifically explained the effect of changing age categories, on this record, and pegged her conclusions to the Grids. The age criteria established in the Medical-Vocational Guidelines framework directs the result reached. Once a person turns 55, he enters a new guideline range of "advanced age." *See Huigens*, 718 F.

App'x at 846. While the five-step evaluation process remains the same, at the final step, age is considered a factor that can affect a person's ability to adjust to other work. *See id.* If a person can adjust to other work, the person is not disabled. *See id.* The guidelines classify a person under age 50 as "younger," a person aged 50 to 54 as "closely approaching advanced age," and a person aged 55 or older as "advanced age." *See id.* If a person 55+ is not able to perform past relevant work but can perform different work that requires a medium level of exertion or higher, the disability claim is denied. If, however, the claimant cannot perform past relevant work and is limited to sedentary or "light" work, like Caudill, the person is disabled. *See id.*

Caudill complains that "the significance of this [the 55th birthday] is not provided." DE 8, at 3. Plainly, that is not accurate. Judge Kleber focused on the age transition and fully explained her view and reasoning.

The correlation is simple: when Caudill turned 55, his ability to adjust to new work became more difficult, categorically. Given that he qualified only for light work, as modified, his age placed him in disabled status per the Grid rules. This sequence routinely plays out in the cases. *See Turner v. Colvin*, No. 5:11-254-KKC, 2015 WL 5474081, at *5 (E.D. Ky. Sept. 16, 2015) (finding determination that plaintiff only became disabled upon entering a new age category after turning 55 supported by substantial evidence); *Woods v. Comm'r of Soc. Sec.*, No. 09-13037, 2010 WL 3070093, at *13 (E.D. Mich. July 13, 2010), *report and recommendation adopted*, No. 09-13037, 2010 WL 3070092 (E.D. Mich. Aug. 4, 2010) (same); *see also Adkins v. Colvin*, 672 F. App'x 739, 740 (9th Cir. 2017) (mem); *Hill v. Sullivan*, 769 F. Supp. 467, 470 (W.D.N.Y. 1991).

Caudill alleged disability beginning at 53. While some claimants can receive benefits by being "borderline" for the advanced age requirement, this typically involves a claimant (1) that was within a few days or months of turning 55 and (2) when viewing the overall impact of all

factors (RFC, age, education, and work experience), along with additional elements that seriously impact the ability to do other work using a "sliding scale approach," the claimant shows "that the factor(s) have a progressively more adverse impact on his or her ability to adjust to other work." *Huigens*, 718 F. App'x at 846. Caudill does not mention this concept or in any way argue that he's a borderline case.

Thus, there is nothing arbitrary about Caudill's established onset date: when Caudill turned 55, he entered a new category of the guidelines. The ALJ made a prior RFC formulation, but the changed age circumstance yielded, in the ALJ's views, a changed disability finding consistent with the Grids. This is a rational decision, explained fully by the adjudicator, and tracks the Grids' framework. There is no basis for reversal based on alleged arbitrariness.

b. **RFC**

Caudill makes an inscrutable attack on the decision's consideration of obesity. In essence, this is an indirect or derivative RFC criticism, namely that the ALJ did not factor the impact of obesity on the efficacy of Caudill's physical therapy progress relative to recovery from his shoulder injury. For several reasons, the criticism is baseless.

First, the ALJ plainly viewed Caudill's obesity as central to his claim. Indeed, Judge Kleber identified Caudill's obesity as one of his severe impairments. *See* R. at 53. The ALJ tracked, in detail, Caudill's current and historical BMI trends, and she carefully assessed the impact of Caudill's obesity on his mobility, stamina, and ability, as well as the worsening impact of obesity on other severe impairments. *See* R. at 54–55. [2]

---

[2] Further, as the ALJ, after recognizing that obesity can exacerbate the ability to engage in sustained activity and worsen other limits, stated: "I carefully contemplated such considerations when reaching the appropriate residual functional capacity, even though no treating or examining source has specifically attributed additional or cumulative limitations concerning Mr. Caudill's obesity." R. at 55.

7

Second, as to the RFC formulation, the ALJ reported full cognizance of obesity and its consequences. In the decider's own words, "I have fully considered obesity in the context of the overall record. I have found the claimant able to perform a range of light work with [added limits] . . . to be appropriate and sufficient to accommodate the impact of the claimant's obesity on his ability to perform work-related activities." *See* R. at 57.[3]

Third, the ALJ referenced and considered Caudill's recovery from the shoulder surgery, to include the PT course and his surgeon's views along the way. *See* R. at 59. This included extant limits on future treatment, concerns about the impact of obesity on future surgery, and assessment of the range of motion and pain-based impacts duly reported by Caudill's surgeon. *See id.* The ALJ built the RFC, with knowledge of and to reflect the shoulder status, and included left arm and left side limitations to the normal light work range. Notably, nothing in the decision premised the RFC on expected future progress or on a positive view of PT outcome in any way different from what the record actually showed. Caudill contends that the ALJ erred by not linking obesity with PT progress, but a) no medical proof supports the underlying criticism and b) the ALJ in no way elided obesity and its many effects on Caudill's abilities or limitations at the time.

The ALJ carefully marshalled the complete medical record, considered the confirmatory input of the state medical consultants, and accounted for Caudill's full history, extant impairments, and characteristics. *See* R. at 60–61. In a nuanced way, she ultimately and temporally distinguished between Caudill's age-sensitive abilities in a way fully consistent with the rubric of the Grids. Claimant's facile criticisms fail in any way to undercut the strength of the ALJ's detailed and fulsome analysis, all of which substantial evidence supports.

---

[3] Indeed, "an ALJ need only consider the claimant's obesity in combination with her other impairments." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010).

IV.   **Conclusion**

   The Court **AFFIRMS** the Agency decision.

This the 30th day of July, 2025.

Signed By:
Robert E. Wier
United States District Judge